UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Thor S., | Case No. 18-cv-538-NEB-KMM |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Nancy Berryhill, *Acting Commissioner of Social Security*, | |
| Defendant. | |

---

Stephanie M. Balmer, Falsani Balmer Peterson & Balmer, 1200 Alworth Bldg, 306 W Superior St, Duluth, MN 55802, counsel for Plaintiff

Linda H. Green, Social Security Administration, 1031 Young Str., Ste A702, Dallas, TX 75202, counsel for Defendant

---

Thor S. appeals from the denial of his application for disability benefits by the Commissioner of the Social Security Administration ("SSA"). This matter is before the Court for a report and recommendation on the parties' cross-motions for summary judgment. Pl.'s Mot., ECF No. 10; Def.'s Mot., ECF No. 12. For the reasons set forth below, Thor S.'s motion should be denied and the Commissioner's motion should be granted.

I.   Background

Thor S. was born in 1978 and has a history of work as a hair stylist and a custodian. Admin. R. ("R") 390–98, ECF No. 9. Thor S. applied for disability insurance benefits and supplemental security income from the SSA on March 31, 2014. He asserted that he became unable to work on July 1, 2013 due to bipolar disorder. R. 173, 182, 193, 204, 336–67.

1

In support of his application, Thor S. also explained that he has extreme anxiety around people, panics when he arrives at his job, and becomes depressed as a result. R. 409. He watches television and calls his daughter at night, but does not have responsibility for caring for others or any pets. R. 410. Thor S. gets reminders from his parents to take care of personal needs and take medicine, but he can make some simple meals and take care of household chores with encouragement. R. 411. He can drive a car, shops in grocery stores, and likes fishing with his father. R. 411–13. However, Thor S. has trouble with talking, hearing, remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others. R. 414.

The SSA denied his claim initially and on reconsideration. R. 173–216. Thor S. requested a hearing by an Administrative Law Judge ("ALJ"). R. 258–64. ALJ Roger Thomas held a hearing on September 13, 2016. R. 136–72. Thor S. testified in support of his disability claim, describing his living arrangement with his parents, difficulties with his medication regimen, which medications help manage his condition, and past events reflected in the medical records. R. 143–57. Among other things, Thor S. noted that he had been offered a job shortly before the hearing by the new owner of a hair salon where he had previously been employed. R. 156. His attorney advised the ALJ that Thor S. was scheduled for an evaluation at a local behavioral-health treatment facility the day after the hearing. ALJ Thomas granted his attorney's request for an additional two weeks to submit any evidence related to the evaluation. R. 139–40.

The ALJ also heard testimony from a medical expert, Dr. Michael Lace, who reviewed Thor S.'s records, but did not examine him. *See* R. 136. Dr. Lace opined that Thor S. would have moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence, and pace as a result of his mental-health impairments. Dr. Lace also explained that Thor S. had experienced one or two episodes of decompensation after his alleged July 1, 2013 onset of disability. Given these findings Dr. Lace opined that Thor S. did not meet or medically equal any of the SSA's listed impairments. However,

2

Dr. Lace noted that his opinion was subject to the caveat there were very few records of recent psychological or psychiatric treatment. *See* R. 159–64.

Shortly after the hearing Thor S. sent a letter to the ALJ along with additional medical records, including: (1) his referral by emergency department personnel for a civil commitment following a hit-and-run accident that occurred a few days after the hearing; and (2) a medical opinion from Dr. David Hyjek, his primary care provider, indicating that he would be unable to perform any employment in the foreseeable future. R. 508, 920–39, 942. He requested that the ALJ provide the records to Dr. Lace for an updated opinion. R. 508.

ALJ Thomas issued his written decision on November 28, 2016, denying Thor S.'s disability claim. R. 23–42. Applying the five-step sequential evaluation process, the ALJ first concluded that Thor S. had not engaged in substantial gainful activity since July 1, 2013. R. 28. Second, ALJ Thomas concluded that Thor S. has severe impairments of bipolar disorder, anxiety, and drug and alcohol abuse.[1] R. 28–29. Third, the ALJ concluded that Thor S. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. R. 29–30. Next, ALJ Thomas determined Thor S.'s residual functional capacity ("RFC"), finding that he can perform a full range of work at all exertional levels, but: (1) he would be required to work in a setting where alcohol or drugs are not sold, served, or readily available; (2) he could have only brief and superficial contact with others; (3) he would be limited to simple,

---

[1]   The ALJ did not apply 20 C.F.R. §§ 404.1535, or 416.935 ("DAA regulations"), which require the SSA to determine whether drug addiction or alcoholism is a contributing factor material to the determination of disability if the SSA finds that a claimant with a substance abuse impairment is disabled. The ALJ did not conclude that Thor S. was disabled at any point in the sequential process, so the DAA regulation analysis was not triggered. Thor S. does not suggest that a remand leading to application of the DAA regulations would end in his favor. Indeed, the ALJ's analysis suggests that it would not. R. 33 (tying "acute events" in Thor S.'s medical history to "relapse").

3

concrete, routine, repetitive tasks; (4) he could not engage in high production work (such as on a fast assembly line); and (5) he would need to avoid exposure to groups of over 100 people. R. 30–34. Based on this RFC, at the fourth step the ALJ determined that Thor S. would not be capable of doing his past relevant work as a church janitor. R. 34. However, ALJ Thomas concluded that Thor S. is not disabled because there are jobs that exist in significant numbers in the national economy that he could perform considering his age, education, work experience, and RFC. R. 35–36.

In part, ALJ Thomas relied on Dr. Lace's opinion to conclude that Thor S. is not disabled. R. 33. He explained that Dr. Lace's opinion was generally consistent with the evidence in the record. R. 33. However, ALJ Thomas found Thor S. should only be precluded from fast-paced production work, not limited to a significantly below average requirement for production quotas hourly and daily," as Dr. Lace recommended. R. 33. The ALJ did not obtain an updated opinion from Dr. Lace based on the post-hearing evidence submitted by Thor S.'s counsel. ALJ Thomas ALJ gave little weight to Dr. Hyjek's opinion that Thor S.'s bipolar disorder would preclude him from employment in the foreseeable future. R. 33–34. He rejected that opinion because it was not consistent with Thor S.'s activities of daily living or the fact that he had recently been offered a job. R. 34. ALJ Thomas also concluded that "Dr. Hyjek's opinion lacks sufficient specificity to inform the establishment of [Thor S.'s] residual functional capacity." R. 34.

ALJ Thomas also discussed the post-hearing evidence regarding Thor S.'s civil commitment. He explained:

> On September 18, 2016, the claimant was brought to the emergency department in police custody, following another reported hit-and-run. His parents reported that he may have relapse[d] on methamphetamines, and the claimant admitted that he was attempting to get police to shoot him. His parents reported that he had been noncompliant with medication and out of psychiatric care for 2 years. On examination five days later, the claimant

4

> demonstrated pressured, abrupt speech, limited attention and concentration, and impaired recollection of recent events.

R. 33. However, the ALJ was not persuaded that these post-hearing events demonstrated disability, noting that the overall record showed "long periods of relative stability with medical treatment, compliance, and sobriety, with acute events related to relapse and conflict with his parents." R. 33.

Thor S. requested review by the SSA's Appeals Council and again submitted new evidence in support of his claim. R. 58–135. Like the post-hearing submission to the ALJ, these documents included medical and court records relating to his most recent civil commitment by the St. Louis County District Court, though the submission to the Appeals Council was more comprehensive. *Compare* R. 58–135, *with* R. 920–39. The Appeals Council denied Thor S.'s request for review. Concerning the additional evidence, the Appeals Council found that it did "not show a reasonable probability that it would change the outcome of the decision," so it "did not consider and exhibit this evidence." R. 2. Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner, and this action followed. *See* 42 U.S.C. § 405(g).

## II.     Legal Standard

In reviewing the Commissioner's denial of Thor S.'s application for benefits the Court determines whether the decision is supported by "substantial evidence on the record as a whole" or results from an error of law. *Gann v. Berryhill*, 864 F.3d 947, 950 (8th Cir. 2017); *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance of the evidence, but is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal citations and quotation marks omitted). The Court considers not only the evidence supporting the Commissioner's decision, but also the evidence in the record that "fairly detracts

5

from that decision." *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). However, the Court does not reverse the Commissioner's decision merely because substantial evidence also supports a contrary outcome or the record might support a different conclusion. *Gann*, 864 F.3d at 950; *Reed*, 399 F.3d at 920. The Court should reverse the Commissioner's decision only where it falls outside "the available zone of choice," meaning that the Commissioner's conclusion is not among the reasonable conclusions that can be drawn from the evidence in the record. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008).

## III.   Discussion

Thor S. raises three challenges to the ALJ's determination that he does not qualify for disability benefits under the SSA. First, Thor S. asserts that the Appeals Council erred when it refused to consider the additional evidence he submitted after ALJ Thomas issued his decision. Pl.'s Mem. at 12, ECF No. 11. Next, he argues that the ALJ erred by failing to obtain an updated opinion from Dr. Lace based on that same evidence. *Id.* at 14–15. And finally, Thor S contends that substantial evidence does not support the ALJ's conclusion that he does not meet or medically equal Listing 12.04(C) due to his bipolar disorder. *Id.*

### A.  Appeals Council's Handling of Additional Evidence

Thor S.'s first argument focuses on the Appeals Council's handling of the additional evidence he provided along with his request for review of the ALJ's decision. Pl.'s Mem. at 13. For the reasons that follow, the Court finds that the Appeals Council did not commit any reversible error.

#### Regulations Applied By Appeals Council

SSA regulations explain when the Appeals Council will review a claimant's case, including situations where additional evidence is submitted after the ALJ's decision is made. 20 C.F.R. §§ 406.970, 416.1470. While Thor S.'s case was

pending before the SSA Appeals Council, these regulations were amended. Thor S. cites an earlier version of the regulation in his brief, which reads:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the great weight of the evidence currently on record.

20 C.F.R. § 404.970(b) (effective to Jan. 17, 2017); Pl.'s Mem. at 13. Applying this earlier version of the rule, the Eighth Circuit has stated that "[t]he Appeals Council's failure to consider [additional] evidence [under this rule] 'may be the basis for remand by a reviewing court.'" *Whitney v. Astrue*, 668 F.3d 1004, 1006 (8th Cir. 2012) (quoting *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995)).

This regulation was amended in December of 2016, with the new language becoming effective on January 17, 2017. In relevant part, the current version of the regulation provides:

> The Appeals Council will review a case if [subject to a good-cause standard] the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

20 C.F.R. § 404.970(a)(5); *see also* 20 C.F.R. § 416.1470(a)(5) (same rule for Supplemental Security Income cases).

The Appeals Council notified Thor S. that the regulation had changed and that the new standards would be applied to his request for review. R. 16–17. The Appeals Council essentially waived the new good-cause requirement in §§ 404.970(b) and 416.1470(b) because his request for review of the ALJ decision was already pending before he could have known he would need to

7

satisfy it to present additional evidence. *See* R. 17. However, the Appeals Council noted "[y]ou must still show that the additional evidence is also new and material, relates to the period at issue, and shows a reasonable probability of changing the outcome of the hearing decision." R. 17. Because Thor S. was advised that the current version of the regulation would be used and the regulation became effective before the Appeals Council made its decision to deny review, the Court will apply it here.[2]

By its plain language, sections 404.970(a)(5) and 416.1470(a)(5) require the Appeals Council to review a case where it receives additional evidence that is: (1) new; (2) material; (3) relates to the period on or before the date of the ALJ's hearing decision; and (4) presents a reasonable probability that the outcome of the decision would change. As the regulation is phrased in the conjunctive, each requirement must be satisfied to obtain review by the Appeals Council.

Here, exactly how the Appeals Council applied the regulation is somewhat unclear. The Appeals Council found that the additional evidence did not show a reasonable probability that the outcome of the ALJ's decision would change. R. 2. To make such a determination, the Appeals Council would, necessarily, have needed to consider the additional evidence. Yet the Appeals Council also advised Thor S. that: "[w]e did not consider and exhibit this evidence." R. 2. As explored below, the Court concludes that in either case, remand is not required.

### Analysis

Thor S. asserts that the additional evidence he submitted would have changed the ALJ's decision. Pl.'s Mem. at 13. He argues that because Dr. Lace

---

[2] The Commissioner argues that the current version of the regulation marks a "shift" in the governing law and the Appeals Council is no longer required to consider additional evidence. Def.'s Mem. at 6. To decide this case, the Court need not resolve this question.

8

offered the only medical opinion in the case, despite having no recent evaluations upon which to draw, so the new psychological assessments would have "automatically" led to a change in opinion. *Id.* The Court disagrees.

The additional evidence reflects Thor S.'s abuse of methamphetamines and his non-compliance with his mental-health medication during September 2016, both shortly before and after the ALJ hearing, when he was civilly committed by the St. Louis County District Court. *See* R. 61, 68, 72, 80, 82–84, 86, 91, 93 (discussing methamphetamine use and medication non-compliance leading up to and after civil commitment proceedings). The ALJ had already evaluated records relating to the same civil commitment that Thor S.'s attorney provided after the hearing. As ALJ Thomas correctly noted, the post-hearing, pre-decision evidence documents Thor S.'s relapse on methamphetamines, his lack of medication compliance, and the lack of psychiatric care for a two-year period leading up to these events. R. 33 (ALJ decision); R. 920–39 (post-hearing, pre-decision evidence). The ALJ explained: "[t]he evidence of record generally demonstrates that the claimant has experienced long periods of relative stability with medical treatment, compliance, and sobriety, with acute events related to relapse and conflict with his parents." R. 33. The ALJ's decision also repeatedly notes Thor S.'s medication non-compliance in connection with exacerbations of his mental-health symptoms.[3] The additional evidence submitted to the Appeals Council reinforces that assessment, eliminating the possibility that the outcome of the decision would have changed if the second wave of supplementary material would have also been before the ALJ.

---

[3] *See, e.g.,* R. 30 (noting "months of medical noncompliance" in connection with 2015 emergency room stay); R. 31 (noting Thor S.'s testimony "that he was noncompliant with medication for a period of approximately 9 months…"); R. 32 (discussing record showing anxiety symptoms reported when "he was off his medications"); R. 33 (noting medication noncompliance and lack of treatment records following an Oct. 2015 emergency room visit through Sept. 2016).

Moreover, the evidence Thor S. provided to the Appeals Council was largely cumulative of the post-hearing evidence that the ALJ considered. Both sets of evidence concern Thor S.'s trouble with police over several weeks in September of 2016, his subsequent involuntary civil commitment by the St. Louis County District Court for mental-health and chemical-dependency issues, his lack of medication compliance during that period, and his abuse of methamphetamines. Although the additional materials provided to the Appeals Council are more voluminous, they repeat the supplemental information already placed in the record before ALJ Thomas made his decision. Thus, it was appropriate for the Appeals Council to decline review because information is only "new" when it is "'more than merely cumulative of other evidence in the record.'" *Stimpson v. Berryhill*, No. 17-cv-0824 (HB), 2018 WL 1440336, at *5 (D. Minn. Mar. 22, 2018) (quoting *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000)); 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

As noted above, it is somewhat unclear whether the Appeals Council considered the new material in denying review, although its characterization of the evidence suggests that it did so. Because the additional evidence provided to the Appeals Council did not create a reasonable probability that the outcome of the ALJ's decision would have been different and was cumulative of the post-hearing, pre-decision evidence the ALJ had already considered, the Court concludes that there was no legal error in the decision to deny review either way. Even if the Appeals Council did not consider the additional evidence, remand to the Appeals Council is not required. *See Wellman v. Berryhill*, No. 4:16-cv-04159-LLP, 2017 WL 5990116, at *17 (D.S.D. Nov. 9, 2017) ("If the Appeals Council refused to consider the [additional] evidence, a reviewing court may remand to the Appeals Council *if the evidence is both new and material*.") (emphasis added).

If, on the other hand, the Appeals Council did consider the additional evidence and declined review, remand is still not required. The Court has reviewed the entire record, including the additional evidence provided to the

Appeals Council, and concludes that substantial evidence supports the ALJ's decision. *See McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013) ("When the Appeals Council denies review of an ALJ's decision after reviewing new evidence, 'we do not evaluate the Appeals Council's decision to deny review, but rather we determine whether the record as a whole, including the new evidence, supports the ALJ's decision."); *Wellman*, 2017 WL 5990116, at *17 (noting that this consideration "requires the court to speculate as to how the [ALJ] would have weighed the newly submitted reports if they had been available in the original hearing") (internal quotation marks omitted). As explored above, the additional evidence before the Appeals Council confirms rather than undermines the ALJ's assessment.

### B. Failure to Provide Supplemental Evidence to Dr. Lace

Thor S. next argues that the ALJ improperly handled the new information that his attorney submitted after the ALJ hearing, but before the ALJ issued his decision.[4] Thor S. contends that the ALJ erred by failing to ask Dr. Lace for an updated opinion based on that same post-hearing evidence. R. 15–16. He cites no authority in support of this argument.

---

[4] Thor S. asserts that the ALJ erred by failing to respond to his request that Dr. Lace be provided with the post-hearing evidence (including the civil-commitment evidence and Dr. Hyjek's opinion) for an updated opinion. Pl.'s Mem. at 15 ("Importantly, [the ALJ] failed to respond at all to Plaintiff's request that the September 2016 medical and civil commitment evidence be provided to Dr. Lace in light of Dr. Lace's conditional opinion...."). Thor S. has not cited any authority for the proposition that the ALJ was required to respond directly to this request in the written decision, and the Court has found none. The Commissioner's regulations provide that the ALJ "shall issue a written decision that gives the findings of fact and the reasons for the decision." 20 C.F.R. § 404.935(a). The ALJ's written decision complies with this requirement.

11

An ALJ has a duty to fully and fairly develop the record. *See Brown v. Bowen*, 827 F.2d 311, 312 (8th Cir. 1987) (discussing duty to develop a full and fair record). The governing regulation provides:

> If ... we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the ... insufficiency. The action(s) we take will depend on the nature of the ... insufficiency. We will try to resolve the ... insufficiency by taking [certain listed] actions....
>
> (1) We may recontact your treating physician, psychologist, or other medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence or clarification. ...

20 C.F.R. § 404.1520b(c) (effective to Mar. 26, 2017); *see also* 20 C.F.R. § 416.920b(c) (SSI claims) (effective to Mar. 26, 2017).[5] As this regulation makes clear, there is no rigid obligation to re-contact medical sources; instead, the ALJ has discretion to determine whether to take such an action if the ALJ determines that the record is insufficient for a determination to be made. *See Bostic v. Berryhill*, No. 1:17-cv-127 (ACL), 2018 WL 4358257, at *8 (E.D. Mo. Sept. 13, 2018) ("The ALJ is required to re-contact medical sources and may order consultative evaluations only if the available evidence does not provide an adequate basis for determining the merits of the disability claim.") (citing *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004)).

Here, the ALJ plainly determined that that the available evidence provided an adequate basis to conclude that Thor S.'s disability claim should be denied. As discussed above, the post-hearing evidence confirmed the ALJ's conclusion

---

[5]   Both 20 C.F.R. § 404.1520b and § 416.920b have been amended since the ALJ's November 28, 2016 decision in Thor S.'s case. Those amendments were not effective until March 26, 2017. The Court applies the versions of these regulations in effect at the time of the ALJ's decision.

that Thor S.'s September 2016 difficulties and resulting civil commitment were connected to a period of medication noncompliance and abuse of drugs, and therefore did not support a finding of disability. The Court concludes that ALJ Thomas did not err in failing to obtain an updated opinion from Dr. Lace.

### C. Listing 12.04 "C" Criteria

Thor S. challenges that the ALJ's conclusion that he neither meets nor medically equals Listing 12.04(C), which applies to affective disorders, including bipolar disorder. Pl.'s Mem. at 15–16. He asserts that this aspect of the decision is not supported by substantial evidence because the ALJ relied on Dr. Lace's opinion that there were insufficient episodes of decompensation, which had become "moot" when the record was supplemented with post-hearing evidence. Pl. Mem. at 15–16. Looking back to 1998, he contends that the record reflects "repeated episodes of decompensation of extended duration, including 13 inpatient admissions over the relevant time period," with a 14th episode shortly after the ALJ hearing, the civil commitment. Pl.'s Mem. at 16. Thor S. suggests that the ALJ lacked substantial evidence to conclude that he does not meet Listing 12.04's "C" criteria.

Listing 12.04 is found at 20 C.F.R. Pt. 404, subpt. P, app. 1, § 12.04 ("Affective disorders"). A finding that Thor S. meets Listing 12.04's "C" criteria requires him to show that "he has a documented chronic affective disorder resulting in one of the three criteria listed in Paragraph C." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). In relevant part, Thor S. is required to demonstrate the following:

> [He] must show a medically documented chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychological support and one of three criteria:

13

> (1) Repeated episodes of decompensation, each of extended duration....

*Id.* at 858–59 (quoting 20 C.F.R. Pt. 404, subpt. P, app. 1, § 12.04(C)). The phrase "repeated episodes of decompensation, each of extended duration" means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). For Thor S. to show that he meets the "C" criteria for this Listing, he must demonstrate that he "meets all of the criteria for the listed impairment." *Blackburn*, 761 F.3d at 858.

For several reasons, the Court finds that the ALJ's decision concerning Listing 12.04(C) does not require remand. First, the ALJ found that Thor S. "only had two episodes of decompensation of extended duration" after his alleged onset date of July 1, 2013. R. 30. The ALJ identified incidents in December 2013 and October 2015 as qualifying episodes. R. 30. He also concluded that "[t]here is insufficient evidence to determine if [his September 2016] episode constitutes an episode of decompensation of extended duration." R. 30. Even if the September 2016 civil commitment constitutes an episode of decompensation of extended duration, the record would contain three such episodes occurring from 2013 through 2016. Therefore, the record would not contain evidence demonstrating that Thor S. experienced at least three episodes within 1 year, or an average of once every 4 months. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4); *see also Blackburn*, 761 F.3d at 859 (concluding that the claimant did not meet all the criteria for Listing 12.04(C) where because "[t]here is no evidence that Blackburn experienced episodes of decompensation of the required length, which is three episodes within a year that last for at least two weeks").

Second, Thor S. provides no support for his suggestion that "the relevant time period" in this case looks back to 1998, when he began experiencing symptoms of an affective disorder. *See* Pl.'s Mem. at 16 (citing R. 140 at which

14

plaintiff's counsel argued that the relevant time period goes back to 1998). The ALJ acknowledged Thor S.'s history of inpatient treatment dating back to 1998,[6] but he concluded that the evidence from the July 1, 2013 onset date forward did not satisfy Listing 12.04(C). R. 30. The Court finds that it was not error for the ALJ to exclude episodes of decompensation that occurred prior to the alleged onset date when analyzing Listing 12.04(C). See Landreville v. Colvin, No. 13-cv-01905-LTB, 2015 WL 361836, at *6 (D. Colo. Jan. 28, 2015) ("The ALJ was correct in not counting these episodes because they occurred prior to the alleged amended onset date, March 19, 2008.") (citing Barber v. Astrue, 431 Fed. App'x 709, 713 (10th Cir. 2011) ("ALJ was not required to consider" "alleged decompensation events" that "preceded the alleged onset date")).

Finally, having reviewed the entire record, the Court finds that substantial evidence supports the ALJ's conclusion that the "C" criteria for Listing 12.04 were not satisfied. Dr. Lace opined at the hearing that there were only one or two episodes of decompensation after the alleged onset date. R. 162–63. The state agency doctors who reviewed Thor S.'s records at the initial and reconsideration levels reached the same conclusion regarding the "C" criteria, including episodes of decompensation. R. 176–77, 197–98. The evidence in the record, including the post-hearing evidence provided to the ALJ and all of the medical records submitted in support of Thor S.'s disability claim, does not undermine these conclusions.

---

[6] The Social Security regulations require consideration of longitudinal evidence because the severity of an impairment and its effect on functioning varies over time. 20 C.F.R., Part 404, subpt. P, app. 1 § 12.00D2. The ALJ's decision clearly reflects that he considered the medical evidence showing inpatient treatment from before the alleged onset date. R. 30 (citing Exs. 1F (R. 514–21), 2F (R. 522–30), 3F (531–45), 4F (546–86), 5F (587–651), and 7F (674–88)).

15

## IV.    Recommendation

Based on the foregoing, the Court recommends that Plaintiff's Motion for Summary Judgment **(ECF No. 10)** be **DENIED** and the Defendant's Motion for Summary Judgment **(ECF No. 12)** be **GRANTED**.

Date: December 13, 2018
                              *s/Katherine Menendez*
                              Katherine Menendez
                              United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.